**Opinion filed July 8, 2010**



# In The

# Eleventh Court of Appeals

_____

## No. 11-08-00317-CR

_____

## BRIAN VALLES, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR34121**

### M E M O R A N D U M   O P I N I O N

Brian Valles was indicted for the offense of aggravated robbery. The jury found Valles not guilty of aggravated robbery, but guilty of the lesser included offense of robbery, and assessed his punishment at thirty-five years confinement. We affirm.

### I. *Background Facts*

At approximately three in the morning, three men entered Abraham Puenta's bedroom and demanded money. One of the robbers was armed with a rifle, and he pointed it at the back of Puenta's neck. Puenta recognized one of his assailants as his brother-in-law's nephew, Alex Garcia. Garcia told Puenta not to do anything stupid or they would kill him. Puenta gave the

robbers approximately $300. The robbers moved Puenta, still at gunpoint, to the kitchen to turn off the kitchen light. They then escorted him to his truck. Puenta gave them more money, and they fled down the street.

Police officers were dispatched to Garcia's home and found three men walking outside. Garcia fled when the police arrived, and the other two were detained. Puenta arrived two hours later to make an identification. It was still dark outside, and the officers used the headlights of a squad car to illuminate the suspects. Puenta identified Valles as the armed robber.

## II. *Identification*

Valles contends that he was denied due process because an impermissible pretrial "showup" identification tainted his in-court identification.[1] Valles must show by clear and convincing evidence that the witness's in-court identification was so tainted as to give rise to a very substantial likelihood of irreparable misidentification. *Madden v. State*, 799 S.W.2d 683, 695-96 (Tex. Crim. App. 1990). In-field showups are generally considered impermissibly suggestive. *Wilson v. State*, 267 S.W.3d 215 (Tex. App.—Waco 2008, pet. ref'd). We will, therefore, assume without deciding that the showup was impermissible and focus on the likelihood that Valles was irreparably misidentified.

To determine whether a suggestive procedure gave rise to a substantial likelihood of irreparable misidentification, we examine the totality of the circumstances. *Delk v. State*, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993). The following factors and other pertinent considerations are weighed against the corrupting effect of the suggestive identification: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior identification; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Id*. We consider these factors, all issues of historical fact, deferentially in a light favorable to the trial court's ruling. *Loserth v. State*, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998). We then weigh them de novo against the corrupting effect of the suggestive identification. *Id*. at 773-74.

The first factor is the opportunity of the witness to view the criminal at the time of the crime. Puenta testified that he was alone with his robbers for twenty to thirty minutes. Although

---

[1] A showup has been defined as a pretrial identification procedure in which a suspect is confronted with the victim or witness. Unlike a lineup, this is a one-on-one confrontation. *Wilson v. State*, 267 S.W.3d 215, 217 n.1 (Tex. App.—Waco 2008, pet. ref'd).

the robbery occurred in the early morning, Puenta testified that he saw Valles in the bedroom, the kitchen, and at his truck. The second factor is the witness's degree of attention. The jury could infer from these facts that Puenta was highly attentive.

The third factor is the accuracy of the witness's pre-identification description of the perpetrator. Puenta described the gunman as a young, bald, thin, Hispanic male who wore a white shirt and dark pants. When Valles was detained, he was wearing a white jersey and blue Dickies. Valles points out that Puenta told the police that he did not see any tattoos on the gunman even though Valles had a large rose tattoo on his forearm. The trial court took note that there was no evidence of how long Valles had been tattooed and that the jersey he was wearing had sleeves. Detective Richard Candelaria testified that Puenta gave a "pretty good description" of Valles.

Puenta expressed a very high level of certainty at the confrontation. He expressed "no doubt" that Valles held a rifle to his head and robbed him. The final factor is the time elapsed between the alleged offense and the out-of-court identification. The length of time that may elapse between the commission of a crime and a showup is significant because the longer the period of time between the two events, the greater the likelihood exists that suggestibility becomes a factor in any identification. *Williams v. State*, 243 S.W.3d 787, 791 (Tex. App.—Amarillo 2007, pet. ref'd). The Court of Criminal Appeals has held that a three-day delay between the offense and the identification was not a lengthy delay in which a victim would tend to forget the physical characteristics of the perpetrator. *See Jackson v. State*, 657 S.W.2d 123, 130 (Tex. Crim. App. 1983). Puenta identified Valles three to four hours after he was robbed.

Additionally, we may consider other relevant considerations in evaluating the reliability of the witness's identification. *Delk*, 855 S.W.2d at 706. Puenta recognized one of the robbers as his brother-in-law's nephew, Garcia. Valles was found by the police shortly after the crime outside Garcia's home walking with two other men. Teofilo Hernandez also testified that he had been with Garcia, Valles, and another man he did not know on the night of the incident. He testified that the four of them walked toward Clay Street and that he stayed on the street while the other three entered the back door of a residence. Hernandez testified that he did not know their plan and did not go inside. He remembered seeing them run from the house and rejoined them on their way back to Garcia's house.

Even if we assume that the pretrial identification procedure was unnecessarily suggestive, we cannot conclude that, under the totality of the circumstances and in a light deferential to the trial court's ruling, there existed a substantial likelihood of misidentification. The trial court did not err in admitting the in-court identification, and Valles was not denied due process. Valles's sole issue is overruled.

## III.  *Conclusion*

The judgment of the trial court is affirmed.


RICK STRANGE

JUSTICE


July 8, 2010

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.

4